Judge Brasher and Judge Hull and I welcome you to the Eleventh Circuit. Just before we get started with our first case, I want to give the same reminder I heard a wise colleague give many times, which is that our traffic light system, the green, yellow, and red, the red light is not aspirational. So when the red light comes, make sure to conclude your remarks, okay? With that, we'll call our first case, Ms. Jones v. Georgia Department of Community Health. Good morning, Your Honors. May I introduce the court? I represent the appellant, Ms. Michelle Jones. Today we're here to appeal the entry of an order granting the defendant's motion to dismiss plaintiff's amended complaint, stating that the complaint was insufficiently This underlying matter is a discrimination claim brought under the Rehabilitation Act. And one question posed by this panel today has been whether or not the Rehab Act follows the mixed motive or but-for-causation standard. Looking directly to the text of the Rehabilitation Act, section 794, 794A did utilize the term solely, stating that language must be interpreted as but-for-causation, but this ignores a later subsection of the Rehabilitation Act, 794 subsection D, which states that the standards used to determine whether the section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under Title I of the Americans with Disabilities Act. Is that the way Congress goes about amending things? So if Congress wanted to create a carve-out, special rules for employment discrimination cases, and specifically to rewrite the explicit causation standard, which is already different in the ADA, I mean, so the two statutes, the 92 amendments to Rehab Act, the 90 ADA Act are real close together in time. Does Congress write, rewrite, or amend, or cross out in that way to, for this sort of case, apply different standards, or would it just say, in a rehab case, the causation standard is X and these subsections from the ADA are incorporated into the Rehab Act? Typically, Congress, and this does go a bit to our next question about abrogation by recent Supreme Court decisions, but I will say it does come into play with Nassar. It's a case that addressed Title VII retaliation matters. It did find that that should apply the because of or but for causation standard, and the reason that was found by the court in Nassar is because the carve-out that they were referring to, the statutory language, Section 2000E2 of Title VII, did not reference participation or opposition activity. Those are activities of retaliation under Title VII. Right, but that has nothing to do with the solely, does it? I mean, that didn't undermine, as I understand Nassar, Nassar didn't say that where Congress uses solely or where Congress does this, it means that it applies to but for standard. What we have to do is to be able to say that solely means in the rehab context, but for, and then but for is defined by the Supreme Court in Nassar and other cases as something, right? Yes, sir. No, you said yes. I think you mean no, because the argument that you just made is that D, Section D is the one that covers employment discrimination claims, and Section A is not applicable here. Section A contains the word solely, and Section D just says apply the word solely. And that being said, that brings me to other circuits that have found similarly and viewed Section 794D as the controlling. Before you get to other circuits, though, can you look at our case law? Because I'm interested in that. I know we cited some to you, we cited McNeely to you as one example, but I don't know if you had a chance to look at the Ellis case, but Ellis is another example. In those cases, did we say and or did we hold that solely is the governing standard in employment discrimination rehab cases? In McNeely, in this context, I would consider McNeely to be dicta. It was sent a case addressing the ADA. I think that's probably right with regard to McNeely. What about Ellis? As to Ellis, Your Honor, I cannot speak to that. Okay. I do have a citation to Todd versus Flagg, and I suppose it's written. Right. So, but in Todd, what we said is that we said there, I was on the panel in Todd, and what we said there is we're not, this is sort of the general standard, we're not going to reach the prime aphasia case, though, we're just going to go right to pretext. So I don't know that Todd can be a holding for what the appropriate causation standard is. My panel members may disagree with me on that, but Todd, I'm not sure your answer is the question, at least for me. Absolutely. And I did take a dive into where the finding or conclusion in Todd came from. It did cite to Holbrook a 11th Circuit case from 1997, which recognized that the Americans with Disabilities Act, excuse me, which recognized that the standards of the section of the Rehab Act, it recognized the language of 794D, recognizing that it should be brought under the ADA, and analyzed the claims brought under the ADA under equal force with the Rehab Act. It's similarly been found in other cases in our circuit, such as Cash v. Smith, 231 Federal 3rd, 1301, that was in this court in 2000, for non-discrimination claims under the Rehabilitation Act are governed by the same standards as ADA cases, and that cases decided Was Cash a causation case? Yeah, I believe so, Your Honor. Can you show me? And if you don't have it right here, I don't want to put you on the spot, but if you can show me, point me where we applied the causation standard in Cash, I would be interested in that. Because I thought Cash was about the regarded as standard. So as I understood it, the ADA has regarded as as one of the ways that one could be considered disabled, whereas the Rehab Act only had that in its regulations, but not in the substance of the text. And what we said in Cash is, we apply the statutory regarded as, as part of the Rehab Act, as part of the standards of the ADA in that section. I didn't recall us saying anything regarding the causation standard, but let me know if you see that, okay? Yes, Your Honor. My citation is to 1305. That being said, I'd like to make sure I cover some specific points as well. Let me ask you, I do want you to, but we've been, I think this is a very interesting question. Does it really matter for our, from your case? Because you've got, I mean, your case is basically, look, the plaintiff was fired shortly after she developed a disability. I mean, at this part of the case, does it matter whether the sole, whether the, does it matter what the causation standard is? Respectfully, Your Honor, no. Appellant maintains that she has met the pleading standard under both but-for causation and the mixed motive standard, though it's appellant's argument that the mixed motive standard would be appropriate based on the reading of the case law. That being said, I did briefly address McNally. And that would only be, just to follow up on Judge Brasher's question, that's only regarding the allegation of temporal proximity. In other words, I made a request, they wanted me to come in, I said no, and I was fired two days later, right? That's the inference to be drawn from that? It's not simply temporal proximity, but as well as looking at the circumstances leading to the adverse action. The parties are to look at the, the courts have used the straw that broke the camel's back approach or metaphor in Hendon v. Camtech in the Northern District of Alabama in 2015. They found that when speaking about but-for causation, there can be several straws that broke the camel's back, but it is the final straw, the last straw that could be viewed as but-for causation. What other straw other than temporal proximity do you have here? We have not pled that anything else motivated her termination. Right. So I guess what I'm saying is the inference you want us to draw is because there was only two days from the point when she said no, I'm not coming into work because I'm disabled and she was fired two days later for a reason she did not know, that that is the inference you want us to draw for why it meets the solely or but-for causation standard? Yes, Your Honor. Okay. And are you saying it meets both? Is that what you're saying? Yes, Your Honor. All right. Let me ask you about one paragraph in your complaint 35 and how do we interpret it because it's your causation allegation. I'm sure you're familiar with it. It says, and I quote, the circumstances surrounding Plaintiff's termination raise a reasonable inference that it was motivated by her disability. Why aren't you really pleading in your complaint a mixed motive? Because you're saying raise a reasonable inference that it was motivated. You don't say solely motivated. Yes, Your Honor. At that point, I can't speak to the drafter of the complaint, but I can say that— Well, we're here at 12B6, right? So we're just looking at the complaint, right? Yes, Your Honor. And I'm looking at count two, rehab, and you do incorporate paragraphs 1-28, but I'm looking at what you allege as to causation, and that's a specific allegation. You allege she was And then 35 is that. So how do I read that other than you're not alleging sole causation, you're alleging it was— Please go ahead and answer, Judge Altshuler. Thank you, Your Honor. These claims, when taken at this pleading standard, at the motion to dismiss standard, should be viewed in a light most favorable to the appellant in this case. Okay. So I should be emoting the fact charge to be solely. No, Your Honor. Okay. Thank you. Judge Bratcher had a follow-up question, and feel free to go ahead and answer. Yes. I just wanted to ask you, so we've talked about the Rehab Act claim, but there's the FMLA claim. I mean, this is your, I think, second amended complaint or certainly amended complaint. Do you think that you've alleged an FMLA claim that survives immunity? Yes, Your Honor. And that being said, in our complaint, the plaintiff properly limited her request to injunctive relief against Defendant Phillips. That meets the Ex parte Young exception, which would allow for her to make this claim against the defendant as an individual. But the district court here, if I can follow up, the district court here said, it says individually in the caption, and it says complaint for damages in the title. So I'm reading this to be an individual and not an official capacity claim. Is that unreasonable? Is that an unreasonable reading? In other words, I'm a district judge. I'm not in your Raptor's mind. I'm just looking at this thing and making the best of it I can. That doesn't seem to be an unreasonable reading of the complaint, especially, as Judge Bradshaw mentioned, on the second go-around. Yes, Your Honor. That being said, the damages that we've been seeking from Defendant Phillips, as used in the introductory paragraph, I will admit, was ambiguous. Thank you, counsel. Thank you. We'll hear from counsel for the State. Good morning. I'm Shelley Steinberg on behalf of the Georgia Department of Community Health and Tisha Phillips. Complaints alleging discrimination must meet the plausibility standard of Iqbal and Twombly. That means that Ms. Jones must state a plausible claim for relief, not simply a conceivable one. Can you go right to Judge Bradshaw's question, because it's the first question I had for you too, which is that, putting aside this dispute about causation, whatever the causation standard is, haven't we said that temporal proximity is a reasonable inference to draw to meet the causation standard at, and I'm only talking about at the 12B6 stage? It could be in some circumstances, but not under the circumstances that were pled here. Why is that? Let me be clear. It could not matter in a complaint that just said, and without more, I made a request for accommodation, I asserted my rights, and two days later I was fired. If it was nothing more than that, you would agree that that would be sufficient to meet the solely standard? Yes, that would be sufficient, assuming there had been facts pled to show disability. Assuming those things, yes, and I know you can test those things. Yes, Your Honor. Tell me why this particular complaint is problematic, and again, if you just focus on the causation at the moment, and I know you want to get to the other elements, and we will. I believe this complaint does not allege a plausible claim under either a but-for causation standard or a solely by reason of causation standard, because it pleads an alternative lawful theory of the reason for termination. How is that a fair reading? Again, reading it in the light most favorable to your opposing party. So it might be plausible to read it the way you're reading it, but is it not also plausible to say, hey, they told me this was the reason I was fired, but I'm paraphrasing, but I never heard of this before. I have no idea what they're talking about. How is that a fair reference to say this is a mixed motive case, as opposed to plausibly alleging they gave me a completely not true motive when I was fired two days later, and the motive is for this reason? I don't believe there was any denial in this complaint of the reason that was offered to Ms. Jones. I also believe that this alternative reason coupled with the... You don't think paragraph 23, so the 22 is where she was informed that it was a subordinate who had performed jobs outside her, I guess the subordinate was a job description, and then 23 is, at no point prior to her termination was Ms. Jones made aware of the subordinate's actions. Isn't that essentially, it isn't, that's untrue. I had no idea, you're firing me for something I had no idea about. That's a fair reading. Okay. And if that's the case, then are we really only left with the temporal proximity? Again, I'm only talking about causation, not the other elements. Yes, I believe you would be left with temporal proximity at that point. Okay. But what's alleged here is essentially a motivating or mixed motive theory. We do believe that sole causation or solely by reason of is the applicable standard under the Rehabilitation Act. Okay, so explain that. Because, I mean, I don't know that this is going to matter for this case, but I read the statute very similar to the way the plaintiff did, which is that A sets out the sole standard, and then D is an exception to A and says, hey, but for cases about employment discrimination, use the ADA standard. Well, I believe it's significant to look at the fact that subsection D was added in 1992 through an amendment. And at the time that subsection D was added, Congress chose not to remove the word solely by reason of. Yeah, because, I mean, there are all sorts of things covered by the Rehab Act that aren't employment discrimination, right? I mean, you've got contracting, you've got other things. So, I mean, why does that matter? Because it is the specific standard of causation set forth in the Rehab Act. And it is a specific standard of causation that would cover any claim under the Rehab Act. Except for D, which says you use the standards from the ADA for employment discrimination claims, right? It says we use the standards, but it's unclear what that means and that it would, that you would not follow this solely by reason of language that was specifically left in there by Congress. We must give effect to the words that Congress chose in a statute. Well, how do you read D then? If it's not an exception to A, then what is it? I believe it should be read in conjunction with A, but doesn't supplant subsection A. So what does it do then? It incorporates the standards in the ADA, such as the standards for how you show a disability, for retaliation, for how you view reasonable accommodation standards. And I believe it's meant to incorporate those standards, but Congress could have removed the words solely by reason of, and they did not. Yeah, but I mean, I guess just assume a world where Congress thinks we want this causation standard under the Rehab Act for everything except for employment discrimination where we want the ADA standards to apply. How else would they write the statute to achieve that result except by adding a subsection that says apply the ADA standards? I believe they could have specifically said so. What would they have said? That they either could have made an exception within subsection A for employment discrimination claims and said that a different standard of causation applies in that circumstance. So are you saying, I mean, you're saying that Congress had to add in subsection D instead of just saying for employment discrimination claims apply the ADA standards, they had to say for employment discrimination claims apply the ADA standards including the causation standard? That's what they need to say? I believe the specificity in subsection A governs here and they could have said something more specific to make it more clear. I do believe that no matter which causation standard is applied here, the complaint as pled would not survive. Before we get out of there, I understand you want to go to the first and second elements, but before we get out of there, let's assume Judge Brasher is right in his reading. Do we have any case law which suggests a contrary reading that we are bound by? I believe that in McNeely there is a discussion of the textual difference between the Rehabilitation Act and the ADA. There is, but that's hard to call out a holding, especially since McNeely is explicit that it is an ADA claim and they are interpreting an ADA claim and really just using the Rehab Act as a comparison, not as a holding of what the Rehab Act means. It couldn't have held that. There was no Rehab Act claims. So it's hard for me to see McNeely as a holding. Any other cases that you've come across? Have you had a chance to look at Ellis at all or no? I have looked at Ellis and it does say that the exception to the same standard of causation principle would be in the standard of causation set forth in subsection A of the Rehabilitation Act. Right, in other words, it applies solely in an employment discrimination case. Correct. Does it do so with regard to causation? Is that a holding that we are bound by? Meaning? In other words, was that a necessary component of the decision in that case? Is that case a causation case? Did we grant summary judgment on causation applying the solely standard? I am not certain, Your Honor. I would be happy to address that later. I would like a briefing if you would like me to. I think I know the answer. I am more concerned about you, too. So I don't know that I need a supplemental brief on it, but thank you. My concern is that we are doing an in-depth analysis of the textual differences between the two statutes. Well, that's certainly true. I think we can both agree on that. That doesn't necessarily mean we are not bound by it, but I agree that it isn't an in-depth treatment of this issue that we are talking about right now. I know you want to talk about the first and second elements. I believe the district court in this case was correct to dismiss the amended complaint in this action because it did not state a plausible claim for relief under either statute. There are no facts showing that Ms. Jones had an impairment that substantially limited her in a major life activity. You agree that walking is a major life activity? I do agree. And you agree that if I can't walk, that would be a substantial impairment, right? I do agree. Okay. If I say to you in the normal course of conversation, my doctor has told me that I am not permitted to put any weight on my knee, would it be reasonable to you to infer that I cannot walk? I think it is reasonable to infer that you cannot walk at that moment. I think the problem and the confusion here is that there are no facts at all showing the severity or duration of this alleged impairment. How long did the state grant on the same exact request, a family medical leave in this case? I believe... As alleged in the complaint. As alleged in the complaint, I believe somewhere between 8 and 11 weeks. I think it was 11 weeks. I think she asked for it to 8 to 10 and the state granted 11. Very nice of the state to give an extra week there. That seems to be a durational period, does it not? It is a durational period for purposes of recovering from surgery, but there's no allegations here that Ms. Jones could not walk for the duration of that requested leave. Well, she was... Let me ask it this way. So she broke the knee, as I understand it, in early August. She was given... She was told she was allowed to work from home or was working from home at the time for up to about 3 weeks until about August 22nd when the request went through. They then gave 10 weeks from that point and the allegations my doctor has told me as a result of everything that's happened to me that I can't put any weight on this. Is that not a substantial limitation for at least some period of time that you can't walk? I mean, is that not a fair inference for someone to draw? It is one conceivable inference, but... Well, it only has to be plausible. That's it. I mean, again, at 12B6, I mean, it's tough for the defense side, right? I mean, all reasonable inferences, all facts are drawn and inferences are drawn in favor of the plaintiff. Is that not a plausible inference even if you could draw another one? I believe it's a conceivable inference and there are other conceivable inferences. And the other piece that is lacking here is that there are no facts at all showing that Ms. Jones could perform the essential functions of her position. All right, so let's talk about that. So you're talking about the second element now, whether she's otherwise qualified. So the argument is that attendance is required, right? That was the basis of the district court's holding. Okay. What's striking to me here is that there are no alleged facts at all in the complaint. So you're not wetting yourself to the attendance issue? You're just saying there was no indication that she could do her job? I believe both are correct, but I think fundamentally a complaint must allege that she could perform the essential functions of her position. But it alleges that in paragraph 33, plaintiff was able to perform the essential functions of her position. That's in count two. I believe that is a conclusory legal assignment. And then she's got above it some facts she's incorporated. I have to go back in. She was doing it. She was working from home. I don't really understand the state's argument on that point. I believe as the district court found, Ms. Jones didn't allege, there weren't really any factual allegations about what her job was and whether she could continue to perform her job, even if we assume she had a disability. It is only inferences that can be made with no facts to support these assumptions. Well, if she was doing her job, I think what Judge Hull's asking, and I have the same question. If she was doing it remotely for a period of time, why couldn't she continue to do it remotely? Well, that's unclear because it's not pled in the complaint whether an essential function of her position was to be present. Well, why wouldn't that be something that you'd have to argue as a defensive matter? An essential function is that you've got to come to work because we need you in the office. Why isn't that a matter, a defensive matter to this case as opposed to something she's got to plead? Presence at the workplace is not an essential function of my job. It seems like that's on the defense. It could be if this matter went into discovery, but it seems at base. Ms. Jones must allege that she... Can I switch you to count one unless Judge Luck wants to ask some more about two? I think we've exhausted count. Because there are various ways to approach count one as defective in lots of ways. It seems to me the simplest way is that it was a suit against an individual and she's not capable of reinstatement, I guess would be the way to say it. Subject matter jurisdiction seems more problematic in light of recent Supreme Court precedent that not much is jurisdictional. Subject matter jurisdiction. It would be better to just say she's not her employer. Is that how the state would have us resolve that? Or how do you want us to resolve count one? There are lots of different ways to resolve it. I believe that Ms. Phillips was sued individually in her individual capacity. That's what the caption of the complaint says. The words official capacity are mentioned nowhere in the complaint. It's important what capacity she's been sued in. And Ms. Phillips is not an employer... So that's how you would do it on individual. Let's assume the district court... I thought the district court construed it as official capacity, but I don't know. I'll go back and look at that. If it is official capacity, what is your response then? That the complaint is still lacking because it fails to allege that Ms. Phillips was capable of effectuating... That she was somebody who could reinstate her. Can I ask you a question about that though? Because I find that to be a little bit of a stretch because it does allege that this is the person that fired her. Why would a reasonable inference not be from, you know, this is the person who fired me. Why would it not be reasonable to say, well, that's the person who could hire you back? Well, I believe that would need to be alleged. Why? I mean, isn't it reasonable to say that if... And I'm not saying that there aren't other reasons for dismissing that count, but I'm just saying that doesn't seem to be a good one because if I allege that you were the person who fired me, isn't embedded in that, that you are a person who has the authority to hire me back. It may not be true, but isn't it reasonable to assume that? Again, I believe it's an inference upon an inference. Okay, what's the first inference? Well, Ms. Jones alleges that Ms. Phillips signed her termination letter, not that she made the decision. It says she received official notice of termination signed by Phillips. So the first inference is that she made the decision to terminate. Correct. But why would that matter for this issue? It doesn't matter who makes the decision to terminate. All that matters is who has the authority to hire you back, right? Correct. Okay, so that doesn't matter. What matters then would be whether she had the authority to hire her back. Why isn't it reasonable to assume that the person  is not a person who has the authority to hire you back? Well, I think, number one, you have to assume that the person who signed the termination letter made that decision. Why does it matter who made the decision? I guess that's what I'm confused about. So, for example, let's say you work at a grocery store and the supervisor, your immediate supervisor, may make the decision to terminate you, but the manager of the store is the one who actually has the hiring and firing power, right? So who cares who makes the decision to terminate you? It's the person who has the actual hiring and firing power that we're concerned with. Why isn't the fact that this is the person who fired her, who signed the slip firing her, why doesn't that suggest that she could hire her back if she wanted to? It doesn't matter who makes the decision, right? It doesn't necessarily matter who makes the decision. That's an inference that could be made, but it's not necessarily true that the person who fires you can hire you back. It's not necessarily true, but isn't it reasonable to think that? It's conceivable, but so is the fact that her supervisor would not have the authority to hire her back, which is why it's very important. And so at this point, we have to... I mean, if you've got two conceivable, reasonable inferences, the one we've got to take is the one that benefits the plaintiff, right? I still believe it's an inference upon an inference, and it's a fundamental... Okay, let's assume that... Well, it's all right. We've talked about this enough. Thank you, Counselor. Thank you. Thank you. Okay. Thank you, Your Honors. I'd like to respond to the points that were brought up earlier. First and foremost, the allegation that we are alleging mixed motive, and that... Sorry, I misspoke. I'd like to address the other circuits that have considered the new language in 794D and approached those and come to the same finding that I'm asking this Court to find today. It has been found in the Second, Fourth, and Seventh Circuits, and as well as... I've taken a look at it, and it looks like just about every circuit has decided it has ruled in your favor, except for, it looks like, the Fifth Circuit. I think the Fifth Circuit is the only one who has still said that the Soli standard applies. Is that a fair reading of the circuit law? Yes, Your Honor. And the Fifth Circuit does find the reasoning in their decision for finding that 794D was not applicable was that 794A was more specific. I think that's simply against reason. Between A and D, only D mentions employment complaints. It's clear that that is more specifically tailored towards employment discrimination complaints. But as to the causation standard, it's not more specific. In other words, I think the general specific canon is a bit of a wash to me, because on the one hand, you're right as to the kind of claim that's more specific, but on the other hand, regarding what standards means, you have one that specifically defines the causation standard, and another just sort of says standards and leaves it open as to what is incorporated in. So that canon seems a bit of a wash to me. Any other reason why we should reject one reading as opposed to the other? Yes, Your Honor. In addition to that, we found that in other circuits where they previously did find but-for causation and have since recognized mixed motive, in many of those situations, the decision was made prior to the ADA amendments in 2008. Following those amendments, several circuits had decisions overturned, superseded by statute, both including the Seventh, the Sixth, and the First Circuit. Courts in this circuit as well, as stated, have followed 794D. Can I ask you a question about it? In our order to you, we cited a district court decision that has refused to follow McNeely on the argument that mixed motive analysis in the ADA context has been overruled by the Supreme Court. If I agree with you that ADA causation standard applies here, what is the correct ADA causation standard that applies here? So that being said, I understand the question being as to how do these Supreme Court presidents affect that causation standard reading. And I will say NASSAR speaks specifically to retaliation claims under Title VII. Gross, as mentioned, also speaks to the ADEA. I think it's important to note that when comparing the statutory language of the four pieces at issue, both the ADEA and Title VII use the language because of, while the ADA was specifically amended in 2008 to state on the basis of a disability. The Rehab Act referring to the ADA incorporates that standard. So then you would say, I mean, just to put a point on it, you would say that those recent Supreme Court decisions don't affect the standard under the ADA? Yes. Okay. I also would like to draw attention to a response to one argument made by defendant that there was not a plausible claim for relief stated. Though I could not find anything on point in this circuit, I did know that other circuits have considered argument whether or not Section 504 imposes a higher standard of causation and found that it does not impose a higher standard at the pleading stage. That was in the Fourth Circuit in Maryland District Court in 2016. That's Kerrigan v. Board of Education. That being said, in that situation, the court granted the plaintiff there an opportunity to amend his complaint and include allegations that coupled together demonstrated a plausible inference, as plaintiff has done here today. If you don't have anything else, counsel, let's... And the last note is... Thank you, counsel. We have your case. Thank you. We'll call the next case.